UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SIMON J. BURCHETT PHOTOGRAPHY, INC. <br><br> Plaintiff, <br><br> v. <br><br> WARTSILA NORTH AMERICA, INC. *et al.*, <br><br> Defendants. | Case No. 19-cv-11356 |

**WARTSILA NORTH AMERICA INC.'S MEMORANDUM IN SUPPORT
OF ITS MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, defendant Wartsila North America, Inc. ("WNA") respectfully submits this brief in support of its motion to dismiss the claims asserted against it in Plaintiff's Amended Complaint (ECF 16) for lack of personal jurisdiction.

**I.     PRELIMINARY STATEMENT**

This lawsuit arises out of a 2006, purely European transaction – the sale of photographic images by Simon J. Burchett, with residences in the United Kingdom and France, to Wärtsilä Corporation, the Helsinki, Finland based indirect parent company of WNA.[1]  The alleged copyright infringements arise out of images on Wärtsilä Corporation's website, a site that is operated and controlled by Wärtsilä Corporation from Finland, not by WNA.  To create the illusion that there is a nexus between this forum and the claims asserted, Mr. Burchett recently assigned his rights to the images at issue to the plaintiff New York corporation, which has

---

[1] Wärtsilä Corporation is incorporated under the laws of Finland (Business ID 0128631-1) and is located at Hiililaiturinkuja 2, 00180, in Helsinki, Finland.  Kellogg Dec. ¶4.

asserted the claims originally only against WNA despite the lack of any connection between WNA, the images, or the facts alleged in the Complaint.[2] In the Amended Complaint, Plaintiff has named Wärtsilä Corporation, but the electronic docket for this case does not show any effort to effect service of process on Wärtsilä Corporation.

There is no basis for this Court to assert general jurisdiction over WNA, which is a Maryland Corporation with its principal place of business in Houston, Texas. WNA has no office or other facility in New York. New York is not WNA's home and it does not maintain a presence in New York. And, while the Complaint alleges a connection between WNA and a New York-based company known as L3 Communications, the reality is that there is no connection (ownership or otherwise) between WNA and L3 Communications.

There is also no basis for this Court to assert specific personal jurisdiction over WNA. Constitutional due process requires a connection between the forum contacts and the cause of action. As regards forum contacts aimed at specific jurisdiction, the Amended Complaint alleges a hodgepodge of sporadic contacts between WNA and New York, but even if those allegations were true (which they are not), the claims in this lawsuit do not arise out of those contacts and do not have any relationship to them.

---

[2] Burchett and its counsel have filed in the Southern District of New York twenty-one copyright claims from June 2018 to the present.

Notably, the assignments used to engage in this tactic are likely invalid under New York's champerty statute. *See e.g. PDVSA U.S. Litig. Tr. v. Lukoil Pan Americas LLC*, 372 F. Supp. 3d 1353, 1360 (S.D. Fla. 2019) (invalidating assignment from PDVSA to a "Litigation Trust," where sole purpose was to facilitate litigation in the U.S.); *Aretakis v. Caesars Entm't*, No. 16-8751 (KPF), 2018 WL 1069450, at *10 (S.D.N.Y. Feb. 23, 2018) (assignment void where "portions of the purported assignment make plain that the purpose of the assignment was to allow Plaintiff to prepare and file a lawsuit seeking to obtain the funds to which Plaintiff claims [assignor] is entitled"); *BSC Assocs., LLC v. Leidos, Inc.*, 91 F. Supp. 3d 319, 329 (N.D.N.Y. 2015) (assignment void where company was formed for sole purpose of taking assignment and litigating claim)

## II.   PROCEDURAL HISTORY

The original complaint in this lawsuit (ECF 1) was filed on December 12, 2019.  WNA filed a motion to dismiss for lack of personal jurisdiction on January 9, 2020 (ECF 8), pointing out the lack of connection between WNA and the underlying European transaction as well the lack of a basis to support personal jurisdiction.  (ECF 9).  Plaintiff's response was to file its Amended Complaint.  (ECF 16).  The Amended Complaint names Wärtsilä Corporation as an additional defendant, but, as noted above, the docket sheet for this lawsuit reflects no steps to effect service on Wärtsilä Corporation.  And, while not actually asserting an alter ego claim, the Amended Complaint makes conclusory allegations attempting to attribute the acts of Wärtsilä Corporation to WNA.  But, those conclusory attribution allegations are not sufficient to withstand a motion to dismiss.

## III.   STATEMENT OF FACTS

1.   WNA is a Maryland Corporation.  Kellogg Dec. ¶2.[3]  Its corporate headquarters are in Houston, Texas.  *Id*.  WNA also has offices or facilities in Florida, Maryland, Virginia, Louisiana, California and Washington.  *Id*.

2.   WNA does not maintain an office or facility in New York.  Kellogg Dec. ¶3.

3.   The ultimate indirect parent of WNA is Wärtsilä Corporation, headquartered in Helsinki, Finland.  Kellogg Dec. ¶4.

---

[3] References in the form "Kellogg Dec. ¶__" are to the accompanying Declaration of Lea Kellogg attached as Exhibit A.

4. WNA and Wärtsilä Corporation are separate and independent companies, with corporate formalities and separations that are respected and observed. Kellogg Dec. ¶5. No member of the Wärtsilä Corporation Board of Directors is a member of WNA's Board of Directors. *Id*. No member of the Wärtsilä Corporation Board of Directors is a member of WNA's management team. *Id*.

5. WNA is not financially dependent upon Wärtsilä Corporation. WNA has its own budget, maintains its own bank accounts, and maintains its own books and records. Kellogg Dec. ¶6.

6. There is no connection (ownership or otherwise) between WNA and L3 Communications, 600 3rd Avenue, New York, NY 10016. Kellogg Dec. ¶5.

7. WNA did not enter into the contractual relationship with plaintiff Simon J. Burchett Photography, Inc. or with Simon J. Burchett with respect to any of the matters that are at issue in this lawsuit. Kellogg Dec. ¶8. WNA has had no involvement with Simon J. Burchett Photography, Inc. or Simon J. Burchett regarding the acquisition or use of any photographs. *Id.* Instead, the relationship concerning the photographs at issue was between Wärtsilä Corporation and Simon J. Burchett. (ECF 16-3, 16-5).

8. WNA does not own or control the wartsila.com website. Kellogg Dec. ¶10. WNA has no input or control concerning the content of the "encyclopedia" or "media portal" sections of the wartsila.com website that are the sections of the website on which Simon J. Burchett Photography, Inc. focuses its complaints. *Id*.

9. WNA did not place the images at issue in this lawsuit on the wartsila.com website and had no role in the decision to place the image on the wartsila.com website. Kellogg Dec. ¶11.

4

10. When Simon J. Burchett Photography, Inc. directed a demand letter to WNA, WNA referred that demand letter to Wärtsilä Corporation for response. Because WNA had no involvement with Simon Burchett, Simon J. Burchett Photography, Inc. or the images at issue in this lawsuit, WNA made no response or representation of any kind, and took no action, in response to any "demand" made by Simon J. Burchett Photography, Inc. Kellogg Dec. ¶9.

11. WNA does not own the engine manufacturing facility located in Trieste, Italy. That facility is owned by a different indirect subsidiary or Wärtsilä Corporation. Schoonman Dec. ¶5.[4]

12. WNA has no ongoing contractual relationship with State University of New York ("SUNY") Maritime College in the Bronx, New York. Schoonman Dec. ¶3. In 2011, WNA donated the main components of a marine engine to SUNY Maritime to be used as a teaching tool. Schoonman Dec. ¶2. It is WNA's understanding that SUNY Maritime renamed a lab to honor that donation. *Id*. There is no continuing relationship between WNA and SUNY Maritime relating to the donated engine. *Id*. WNA has not provided maintenance for the donated engine. *Id*.

## IV. ARGUMENT

Plaintiff cannot establish a basis for this Court to assert either general or specific personal jurisdiction over WNA.

### A. The Analytical Framework

#### 1. Burden of Proof

The party invoking jurisdiction has the burden of establishing its existence. *Penguin Gr. (USA), Inc. v. Am. Buddha,* 609 F.3d 30, 44 (2d Cir. 2010). Where the district court bases its

---

[4] Citations in the form "Schoonman Dec. ¶__" are to the accompanying Declaration of Hanno Schoonman attached as Exhibit B.

5

ruling on a motion to dismiss for lack of personal jurisdiction solely on affidavits and other evidentiary material, the plaintiff must make a *prima facia* showing of personal jurisdiction. *Id*. at 34-35. To make this *prima facie* showing, plaintiff must demonstrate a statutory basis for personal jurisdiction, and that the Court's exercise of jurisdiction is in accordance with constitutional due process principles. *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012)). In measuring the showing made by a plaintiff, this Court cannot accept as true a legal conclusion couched as a factual allegation, nor will it draw argumentative inferences in the plaintiff's favor. *Id*. at 59. Although a plaintiff's allegations are ordinarily accepted as true at the pleadings stage, on a motion to dismiss for lack of jurisdiction, where "defendant rebuts plaintiffs' unsupported allegations with direct, highly specific, testimonial evidence regarding a fact essential to jurisdiction – and plaintiffs do not counter that evidence – the allegation may be deemed refuted." *Merck & Co. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 420 (S.D.N.Y. 2006) (citations omitted).

### 2. The New York Long-Arm

The New York long-arm statute does not extend in all respects to the constitutional limits established by *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154 (1945), and its progeny. *See, e.g., Best Van Lines v. Walker,* 490 F.3d 239, 244-45 & n. 8 (2d Cir. 2007) (noting "gaps" between the jurisdiction conferred by the New York long-arm statute and that permissible under the federal Due Process Clause). Thus, even if the New York long-arm statute extended to the limits of the Constitution, if the federal constitutional standards are not satisfied, there is no basis for long-arm jurisdiction.

### 3. Constitutional Due Process

In *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014), the Supreme Court made it clear

that the constitutional due process standard for the exertion of general jurisdiction is very high – except in the rarest of circumstances the assertion of general jurisdiction over a company is appropriate only in the state of its incorporation or its principal place of business. And, for the assertion of specific jurisdiction to comport with Constitutional Due Process, the defendant must have purposefully directed his conduct at the forum State (minimum contacts test); **the cause of action must be related to or arise out of the defendant's forum-related activities**; and the exercise of jurisdiction must be reasonable under the circumstances. *U.S. Bank National Association v. Bank of America N.A.*, 916 F.3d 143, 150 (2d. Cir. 2019) (emphasis added).

In short, the Due Process Clause protects foreign defendants from being subject to court proceedings in jurisdictions in which they have no substantial presence sufficient to establish general jurisdiction and as to which their activities in the jurisdiction are not related to the claims asserted, i.e., are not sufficient to establish specific jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 2181-82 (1985), *Int'l Shoe Co.,* 66 S.Ct. at 158.

### B. The Analytical Framework Applied to the Facts Alleged in the Complaint

#### 1. This Court Cannot Assert General Jurisdiction Over WNA

General jurisdiction only exists in very limited circumstances: a corporate defendant must have "substantial" or "continuous and systematic" contacts such that they are "essentially at home" in the state of New York. *Brown v. Lockheed Martin Corp.,* 814 F.3d 619, 623 (2d Cir. 2016); *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014) ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home.") (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Other than in exceptional circumstances, a corporation is "at home" in their place of incorporation and

principal place of business. *Daimler AG*, 134 S.Ct. at 761, n.19 (citations and internal alterations omitted); *see also BNSF Ry. Co. v. Tyrrell,* 137 S.Ct. 1549, 1558 (2017) (affirming that it is a very "exceptional case" for finding general jurisdiction over a corporation where that corporation has neither their headquarters or principal place of business in a state).

Neither WNA's corporate headquarters nor its principal place of business is in New York, and no exceptional circumstances present themselves warranting a departure for a finding of general jurisdiction. Indeed, the Amended Complaint does not even allege that WNA has the sort of continuous and systematic contacts with New York needed to justify the assertion of general jurisdiction – such that a defendant is essentially "at home" – nor do these circumstances exist. *Daimler AG*, 134 S.Ct. at 760 (2014).

### 2. This Court Cannot Assert Specific Jurisdiction Over WNA

In assessing whether there is a basis to assert personal jurisdiction over a defendant, New York courts generally consider first whether a provision of the New York long-arm has been satisfied because the outer bounds of the New York long-arm are not coextensive with the outer bounds of Constitutional Due Process. Here, however, the Court can and should consider the Constitutional Due Process analysis first because there are no contacts between WNA and New York relating to the causes of action alleged in the Complaint – an essential prerequisite for the assertion of specific jurisdiction.

As the Court stated in *Minholz v. Lockheed Martin Corporation*, 227 F.Supp.3d 249, 259-60 (2016):

> For specific jurisdiction, "[a] corporation's continuous activity of some sorts within a state ... is not enough to support the demand that the corporation be amenable to suits unrelated to that activity." *Goodyear,* 564 U.S. at 927–928, 131 S.Ct. 2846 (citing *Int'l Shoe Co.*, 326 U.S. at 318, 66 S.Ct. 154). "The plaintiff must demonstrate that [her] 'claim arises out of or relates to [defendant's] contacts with [the forum state]' and that the defendant 'purposefully availed' [itself] of 'the privilege of doing business in' the forum state such that [it] 'could

8

foresee being 'haled into court' there.'" *SPV OSUS Ltd.*, 114 F.Supp.3d at 169 (quoting *Kernan v. Kurz-Hastings, Inc*., 175 F.3d 236, 243 (2d Cir. 1999)) . . .

As set forth above in the statement of facts, the accompanying declarations, and Exhibit 3 to the Amended Complaint, the images at issue were sold by Simon J. Burchett, then located in the United Kingdom and France, to Wärtsilä Corporation, headquartered in Finland, in a European transaction. The images at issue were located on a website operated and controlled by Wärtsilä Corporation, not WNA. As such, whatever was done with the images – whether by Simon J. Burchett or Wärtsilä Corporation – WNA was not involved.[5] The other alleged contacts between WNA and New York have no connection with the causes of action alleged in the lawsuit, even if the contacts were accurately stated, which they are not. Kellogg Dec. ¶5; Schoonman Dec. ¶¶2-5.

### 3. The Alleged Contacts Between Wärtsilä Corporation and This Forum Do Not Provide a Basis for This Court to Assert Personal Jurisdiction Over WNA

The Amended Complaint also contains a handful of conclusory assertions in which the Plaintiff attempts to blur the distinction between Wärtsilä Corporation and WNA, in an apparent attempt to attribute activities of Wärtsilä Corporation to WNA. For example, the Amended Complaint contains allegations that refer to the "defendants" generally. *See e.g.* ECF 16 at ¶¶18-19. Elsewhere, Plaintiff makes naked assertions like "defendants operate as a single unified entity for the purposes of marketing and advertising." *Id*. at ¶72.

---

[5] As noted above, while Wärtsilä Corporation is the indirect corporate parent of WNA, the two companies are separate and independent. The contacts of affiliated companies are not relevant to the jurisdictional analysis in the absence of a good faith basis to allege that the entities are essentially alter egos. *See Helicopteros Nacionales de Colombia, S.A*. 104 S.Ct. at 1873 ("[The] unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction"); *see also Volkswagenwrk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117, 12 (2d Cir. 1984) ("It is true that the presence of a local corporation does not create jurisdiction over a related, but independently managed, foreign corporation.").

9

Even if there were a basis for this Court to assert personal jurisdiction over Wärtsilä Corporation for claims arising out of the purely European transaction at issue here, the activities of Wärtsilä Corporation cannot be attributed to WNA. The law is clear: "[a] court may exercise personal jurisdiction over a subsidiary based on its jurisdiction over the parent company only when the subsidiary is an 'alter ego' or 'mere department' of the parent company." *Indemnity Insurance Company of North America v. Expeditors International of Washington, Inc.*, 382 F.Supp.3d 302, 310 (S.D.N.Y. 2019) (citations omitted). "Disregard of the corporate form is warranted only in extraordinary circumstances, and conclusory allegations ... will not suffice to defeat a motion to dismiss." *Schiro v. Cemex, S.A.B. de C.V.*, 396 F.Supp.3d 283, 303 n.11 (S.D.N.Y. 2019) (citations omitted).

Notably, the conclusory allegations advanced by Plaintiff to blur the lines between Wärtsilä Corporation and WNA fall far short of alleging that WNA is the alter ego of Wärtsilä Corporation. That is not surprising. As the accompanying declaration of Lea Kellogg, the secretary of WNA's Board of Directors makes plain, WNA and Wärtsilä Corporation are separate and independent companies, with corporate formalities and separations that are respected and observed. Kellogg Dec., ¶¶ 5-6. No member of the Wärtsilä Corporation Board of Directors is a member of WNA's Board of Directors. *Id.* No member of the Wärtsilä Corporation Board of Directors is a member of WNA's management team. *Id.* In short, there is no basis for this Court to attribute any alleged contacts between Wärtsilä Corporation and this forum to WNA.

## V. CONCLUSION

For the foregoing reasons, Defendant Wartsila North America respectfully requests that the Court dismiss the claims asserted against WNA in Plaintiff's Amended Complaint.

Dated: February 6, 2020								Respectfully submitted,

											     /s/ John Chamberlain
											John Chamberlain
											Pillsbury Winthrop Shaw Pittman LLP
											1200 Seventeenth Street, N.W.
											Washington, D.C. 20036-3006
											Telephone: (202) 663-8000
											Facsimile: (202) 663-8007
											*Counsel for Wärtsilä North America, Inc.*

Of counsel:

Michael Evan Jaffe (*pro hac* pending)
Gerald Zingone
Pillsbury Winthrop Shaw Pittman LLP
1200 Seventeenth Street, N.W.
Washington, D.C. 20036-3006
Telephone: (202) 663-8000
Facsimile: (202) 354-5261